MORGAN *et al. v.* COLLINS SCHOOL HOUSE *et al.*

(Division B. April 20, 1931.)

[133 So. 675. No. 29342.]

See also 157 Miss. 295, 127 So. 565.

Floyd O. Collins, of Laurel, for appellant.

**G. W. Hosey** and **T. Webber Wilson**, both of Laurel, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellants were complainants in the court below and filed a bill to cancel claims of the Collins School House, Collins Graveyard, and any persons claiming interest to a lot described as commencing ten yards west of southeast corner section 30 and running south twenty yards, thence west one hundred ten yards, thence north one hundred ten yards, thence east one hundred ten yards, thence south ninety yards to point of beginning. It alleged that the complainants were owners of said land and that they had found of record a deed, or purported deed, attempting to convey, or purporting to convey, the said lands to the Collins School House and the Collins Graveyard; that there never was any such person, or corporation, or legal entity known as the Collins Graveyard or the Collins School House, and prayed that said deed be cancelled as a cloud upon their title. Publication was made for Collins School House, Collins Graveyard, and all persons having or claiming any interest in the lands described in the bill to appear and plead, answer, or demur to the bill.

Title was deraigned from the United States government to the complainants to the lands involved, or subdivisions containing the land described in the deed. C. C. and C. E. Collins signed the deed to the Morgans, and C. C. Collins and Vinson Collins, his father, secured title to the land from the United States government. In 1925 C. C. and C. E. Collins conveyed to W. D. English the west half of the northeast and southeast quarter of section 30, township 9, range 12 west, and the southeast quarter of the southeast quarter of section 30, township 9, range 12 west, less portion of said forty acres deeded to W. T. Harper and portion of said thirty acres deeded to Lebanon Church and graveyard, and the northeast quarter of the northeast quarter of section 31, township 9, range 12 west, less that portion of the said forty acres

heretofore deeded to Lebanon Church and graveyard, and that portion heretofore deeded to Morgan Holifield.

The deed sought to be canceled bears date of the 13th day of August, 1904, and reads as follows:

"C. C. & C. E. Collins to the Collins Graveyard & School House.

"In consideration of one dollar we convey and warrant to the Collins Graveyard and Collins School House the land described as follows, to-wit: One lot commencing ten yds., West of the S. E. Corner of Sec. 30 and running South twenty yards, thence West one hundred ten yds., thence north one hundred ten yds. thence East one hundred ten yds., thence South ninety yds. Back to point of beginning all in Sec. 30 & 31 T. 9 R. 12 W. situated in the County of Jones and State of Mississippi. When the above described land and house thereon ceases to be used for school and church purposes said land to revert back to the parties making this deed.

"Witness our signatures this the 13th day of Aug. 1904."

At the time this instrument was made, C. E. Collins, the wife of C. C. Collins, was the owner thereof. A school was never established at the point or upon the land described by the publication. The object in making the deed appears to be to have a public school established at that point for the community. Prior thereto the Collins family buried their dead in this land. The father of C. C. Collins was buried there about 1890, and a brother of C. C. Collins had been buried there during the Civil War, and other members of the Collins family had been buried there, and prior to the making of the instrument some other persons were buried in the said lands, and subsequent to the execution of the instrument a number of persons had been buried there, and at the time of the trial there were some fifty or sixty graves in this land.

It appears that a pay school was taught about two months in one year and one month in another year short-

ly after executing this instrument sought to be canceled. Some time shortly after the execution of the instrument there appears to have been conducted in the school building religious services by members of the Baptist Church, and the church was known as the Lebanon Baptist Church. It appears that there was some division among the members of the church along lines of missionary activities, and the congregation appears to have been divided upon that question. A part of the congregation affiliated with what is known as the Missionary Baptist and the other part with the Landmark Baptist Church. The grantors, C. C. Collins and C. E. Collins, appeared to have been members of the Lebanon Church and were affiliated with what is known as the Missionary Baptist. The Missionary Baptist seem to have abandoned whatever use was made of the building and the Landmark Baptist continued at times to hold religious services in the house. At the time of the division C. C. Collins was the deacon of the church and his name seems to have been kept on the records, even though he testified that the Lebanon Church was dissolved, and that he was not connected with the Landmark Congregation.

It will be seen from the deed that no person was named as a grantee in the deed, and proof shows that there was no corporation ever known in that community as the Collins School House or Collins Graveyard. No trustee or person having authority to acquire and hold property for the congregation seems to have been appointed by the congregation, and the only thing tending to show any claim other than the answer is the fact of meeting in the house upon the land for religious services, and the employment of preachers to preach, and certain statements alleged to have been made by C. C. Collins at the time the church meetings first began to be held. There is no writing conveying any interest in the land to the Lebanon Baptist Church, or to any persons who are shown to be trustees for such church or congrega-

tion. There were no minutes showing the organization of the church, to show a compliance with the statute authorizing organized churches to hold and own property.

The case was here on a former appeal, and is reported in 157 Miss. 295, 127 So. 565, and in that decision the instrument sought to be cancelled was held to be void and not to be a deed, that a grantee in esse is a prerequisite to validity of a deed conveying land. Under section 2111, Code of 1930, it is provided: "An estate of inheritance or freehold, or for a term of more than one year, in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."

It is therefore manifest that the Lebanon Baptist Church did not acquire any title to the said land by virtue of the instrument sought to be cancelled, and the rights it exercised were in fact a mere license. The acts of ownership are insufficient to constitute adverse possession. This land was not conveyed to English by the conveyance of 1925, but was reserved to the owners, C. C. Collins and C. E. Collins. The recitals in the reservation in that deed do not constitute a conveyance of any right. No deed was shown to have been made to the Lebanon Church and Graveyard. It follows, therefore, that the Lebanon Baptist Church or the Lebanon Baptist Church and Graveyard have shown no title to the land, and the complainants having deraigned title, showing a perfect title subject only to whatever rights flow from the instrument sought to be cancelled, and on the facts stated, the title exists in the complainants, subject to the rights of families who have their dead buried in this land to care for the graves and to continue to bury therein members of their families who hereafter die. A private cemetery cannot be acquired by dedication. 11 C. J. 57; Wooldridge v. Smith, 243 Mo. 190, 147 S. W. 1019, 40 L. R. A. (N. S.) 752.

Under the facts shown in the testimony the permitting of people to bury their dead in the said lands, and its use as a cemetery or graveyard by persons with permission and a consent of the owners creates a situation which equity will protect to the extent of its powers to do so under the facts. 11 C. J. 58, section 19. See Code of 1930, sections 850-852. Equity administers relief to complainants who are willing to do equity and requires a willingness to do equity as a condition of granted relief. Taking the situation presented in the record, we think it would be required of the complainants to do equity to permit people who had already begun to bury their dead and who had already buried some of them in the said lands to have access to the graves and the right to bury other members of the family beside those who are already buried, and to prevent the complainants from interfering with these rights, but as to all persons who have not buried their dead in the said lands and as against the rights claimed on behalf of the church the relief prayed for will be granted on condition that complainants observe equity as herein set forth. The custom of ages has been for people to bury their relatives together or in the same cemetery as far as reasonably possible and giving a privilege to bury should be understood as carrying this right.

The decree of the chancellor will be reversed, and a decree entered here in accordance with this opinion, with direction that the decree be recorded by the complainants in the record of conveyances of the proper district of Jones county, Miss.

Reversed, and decree here.