WILSON *v.* GERARD, et al.

Feb. 4, 1952.

No. 38204 (56 So. (2d) 471)

Torrey, Foreman & Torrey, and Roach & Jones, for appellant.

**Wall & Allen,** for appellees.

**McGehee, C. J.**

This is an appeal from a decree which sustained a demurrer to a bill of complaint and finally dismissed the cause upon failure to amend the statement of the facts or grounds of the complaint.

The appellant, J. J. Wilson, purchased from the appellee J. A. Gerard, on May 8, 1939, by warranty deed, certain tracts of land for the sum of $1,750 in cash, and his deed of conveyance contained, immediately following the description of the lands, the following words: "Subject to one-half interest in mineral and oil rights as conveyed to Wm. Henderson." On May 14, 1949, the appellant filed his bill of complaint which alleged the foregoing facts, and further alleged that he had recently learned that the attempted exception was null and void for the reason that on the date of the conveyance from the appellee Gerard to him, no interest in the minerals and oil rights on the lands had ever been conveyed by his said grantor to Wm. Henderson, who, the bill of complaint alleges, was a nonexistent and fictitious person to whom a purported deed of conveyance was claimed to have been executed by the appellee Gerard on April 1, 1939, and for the purpose of cheating, wronging, and defrauding the appellant Wilson out of an undivided one-half interest in the oil, gas, and other minerals in, on, and under said land.

The purported conveyance from Gerard and wife of April 1, 1939, to said Henderson for an undivided one-half interest in and to all of the oil, gas, and other minerals under these lands appears to have been acknowledged on that date before the chancery clerk, but it was not filed for record until March 21, 1945. The conveyance from Gerard and wife to the appellant Wilson was executed on May 8, 1939, as aforesaid, and was filed for record on that date; and a deed of conveyance dated and recorded September 25, 1941, purports to have been executed by Wm. Henderson reconveying to the appellee Gerard the undivided one-half interest in said minerals which was claimed to have been purchased by him from Gerard under the date of April 1, 1939. Copies of these conveyances, together with a copy of the conveyance executed by Gerard and wife to the appellant Wilson on

May 8, 1939, are all treated as being exhibits to the bill of complaint.

The bill of complaint further alleges that at the time of the execution of the deed from Gerard and wife to the appellant Wilson containing the words, "subject to one-half interest in mineral and oil rights as conveyed to Wm. Henderson," the said grantor, Gerard, knew that no such person as Wm. Henderson was in existence and that the deed executed by him to Henderson, and the subsequent deed from Henderson back to Gerard, were a part of a plan and scheme of the said Gerard to cheat, wrong, and defraud the appellant Wilson out of the said one-half undivided interest in the oil, gas and other minerals; that the appellant Wilson relied upon the representation as being true that his grantor, Gerard, had theretofore sold one-half of the minerals to the said Wm. Henderson; that the said Wm. Henderson being a fictitious person, the exception in the deed from Gerard to the appellant Wilson was null and void for the want of a grantee *in esse*, such as Henderson; and that, therefore, the title to all of the minerals under the land became vested in the appellant Wilson under and by virtue of the deed from Gerard to him of May 8, 1939.

The appellant relies in part upon the cases of Morgan v. Collins School et al., 157 Miss. 295, 127 So. 565, and Morgan v. Collins School House, 160 Miss. 321, 133 So. 675, which expressly hold that a deed having no grantee *in esse* is void.

The result of the well-settled rule as announced in the foregoing decisions is that if there were no such person *in esse* as Wm. Henderson when the conveyance of April 1, 1939, was executed by the Gerards to such a named fictitious grantee, as alleged in the bill of complaint, it would follow that the Gerards were not thereby divested of any part of the minerals under the lands thereafter sold to the appellant Wilson. But the point at issue on this appeal is whether or not the one-half undivided interest in the minerals which the Gerards purported to

convey when they named Henderson as grantee became vested in their subsequent grantee Wilson under the deed of May 8, 1939, conveying to him the land "subject to one-half interest in mineral and oil rights as conveyed to Wm. Henderson" or remained in the Gerards as grantors of the said Wilson.

In the case of Morgan v. Collins School et al., supra [160 Miss. 321, 133 So. 675] J. W. Morgan and wife filed their bill of complaint to cancel as a cloud upon their title a deed from their grantors C. C. and C. E. Collins "to the Collins Graveyard and Collins School House", bearing date of August 13, 1904, and specifically describing about two acres of land by metes and bounds, under a legal description. The deed from the Collins to the Collins Graveyard and Collins School House contained a provision which read: "When the above described land and house thereon ceases to be used for school and church purposes said land to revert back to the parties making this deed." It appears that the Lebanon Baptist Church was located on the land but that no school house was ever established thereon. An examination of the original appeal record in the case, reported in 160 Miss. 321, 133 So. 675, discloses that on March 28, 1929, the said C. C. and C. E. Collins conveyed the same two-acre tract of land, without any exception or reservation, to J. W. Morgan and wife. The Court held on the first appeal in the Morgan case, as reported in 157 Miss. 295, 127 So. 565, that the trial court was in error in sustaining a demurrer to the bill of complaint filed by J. W. Morgan and wife to cancel the deed from their grantors to the Collins School House and the Collins Graveyard, since the deed to the Collins School House and Collins Graveyard was void for the want of any legal entity or person named therein as grantee, and therefore reversed and remanded the case, because J. W. Morgan and wife had alleged that they held a deed describing the entire property in question, and that the void deed theretofore executed by their grantors to the

school·house and graveyard was a cloud upon their title which they were entitled to have cancelled as such.

On the second appeal, as disclosed by the original appeal record hereinbefore mentioned, the deed from C. C. and C. E. Collins to the appellant J. W. Morgan and wife is fully set forth in the record, and, as heretofore stated, contains no reservation or exception. In other words, on the second appeal, the Court held in effect that the void attempt of C. C. and C. E. Collins to convey the land to the Collins School House and the Collins Graveyard resulted in leaving the title of the two acres of land in the said grantors, and that therefore the title thereto passed from the Collins to the Morgans under their subsequent deed of March 28, 1929. The Morgans obtained title to the land, however, by reason of their own deed from the Collins conveying the land to them, and not by reason of any exception thereof in their deed.

Moreover, it further appears from the record on the second appeal of the Morgan case that C. C. and C. E. Collins had on October 16, 1925, conveyed certain lands to W. D. English "less that portion of the said forty acres heretofore deeded to Lebanon church and graveyard". The exception in the deed to English of the land theretofore sold to the Lebanon Church and Graveyard—nonexistent legal entities—did not have the effect of conveying to English the land on which the Lebanon Church and Graveyard were located, and the Court expressly so held when it stated "This land was not conveyed to English by the conveyance of 1925, but was reserved to the owners, C. C. Collins and C. E. Collins." It would appear that W. D. English, who received a deed excepting land theretofore sold to the Lebanon Church and Graveyard, was in the same position that the appellant Wilson is now in in the present case. As above shown, English received his deed to certain lands, less that theretofore deeded to the Lebanon Church and Graveyard, on October 16, 1925, long prior to the receipt of the deed by the Morgans from the same grantors on

March 28, 1929, but the Court held that the Morgans instead of English acquired the title to the land on which the church and graveyard was located, and of course on the theory that the title thereto had remained in the Collins unaffected by the void conveyance thereof to a school house and graveyard.

In the instant case the bill of complaint alleges that the appellant Wilson relied upon the representation that one-half of the minerals had been previously sold to Wm. Henderson at the time the Gerards sold the land to him subject thereto. In other words, Wilson alleges, in effect, in his bill that he understood that he was only purchasing the land and one-half of the minerals.

If the allegations of the bill are true, and we must assume that they are true for the purpose of the demurrer, then the Gerards were guilty of unethical conduct in representing to the appellant Wilson that they had previously sold one-half of the minerals to Henderson, but this would not amount to a legal fraud since the grantee Wilson would have received only one-half of the minerals if the representation had been true that one-half thereof had been previously sold to Henderson. A different situation would be presented if this were a suit by the Gerards or their heirs at law to cancel their deed to Henderson as a cloud upon their title on the ground that the Gerards were fraudulently induced to execute a deed to a fictitious person, or if they had done so in the absence of fraud but through mistake as to the existence of such a person. In either event, the title would have remained in the Gerards and the conveyance to a nonexistent grantee would have left the title remaining in the said grantors.

In 26 C. J. S., Deeds, Section 140a, p. 451, it is stated: "In general a grantor who makes a reservation or exception to his grant does not part with his full title or dominion. Property which is excepted is not granted; it does not pass to the grantee, but, where not already outstanding in another, necessarily remains with the

grantor." In the same text, 26 C. J. S., Deeds, Section 140a, at page 450 it is stated that an exception will be good as to property recited to have been previously sold or conveyed, although the recital is false. And in a leading Texas case of Reynolds et al. v. McMan Oil & Gas Company et al., Tex. Com. App., 11 S. W. (2d) 778, 781, it is stated, among other things, that "for the purpose of determining the extent of the grant, however, the distinction between exceptions and reservations is of no practical importance, since whether the one or the other the property excepted or the estate reserved is never included in the grant." Again in the case of Georgia Vitrified Brick & Clay Company v. Georgia Railroad and Banking Company, 148 Ga. 650, 98 S. E. 77, it was held that "Where a deed excepts from its provisions certain land as conveyed in a specified deed recited to have been formerly executed by the grantor to another person, such grantee does not thereby acquire the land so excepted; * * *. It would not affect the case even if the former deed had not been delivered, or if the witnesses thereto were incompetent, * * * or if the grantee in the senior deed (a corporation) did not have charter power to own land."

In the case of Cook v. Farley, 195 Miss. 638, 15 So. (2d) 352, 354, it was held that a provision in a deed, excepting from the conveyance of land all minerals, which it recited that grantors had promised to convey to their son, was effective to retain title to minerals in the grantors, though no estate therein passed to the son; that an exception by deed in favor of a stranger thereto cannot operate as a conveyance of excepted land to him, though effectual to prevent title thereto from passing to grantee, whose acceptance of deed precludes him from asserting title to excepted land. It is recognized that a different factual situation prevailed in that case from that which exists in the case at bar, but we are of the opinion that the principles announced therein do have application to the question now before us. In that case, Mrs. Ettie C. Cook,

and her husband, Dr. E. R. Cook, conveyed certain lands to B. L. Goss, and excepted from the conveyance "all oil, gas and mineral deposits on said lands, which the grantors hereto have promised to convey to Aquilla B. Cook," the latter being the son of the grantors therein. Thereafter, Aquilla B. Cook undertook to convey the minerals to the said Goss, who thereafter undertook to sell both the land and the minerals to Farley. The Court held that the title to the minerals remained in Mrs. Ettie C. Cook. In other words, the exception was held to have had the effect of causing the title to the minerals to remain in Mrs. Ettie C. Cook, and that the exception was invalid and ineffectual to vest the title to the minerals in her son. By analogy, the fact that no title passed to her son by virtue of the exception, it did not result therefrom that the title became vested in her grantee Goss. As stated above, that case is not directly in point here, but the principles therein announced are persuasive on the question at issue.

We are not unmindful that there is a statement in 16 Am. Jur. 610, Section 301, which tends to support the contention of appellant and that there are some to the contrary, but we are of the opinion that the Morgan cases, the case of Cook v. Farley and some cases from other jurisdictions are in support of the action of the trial court in sustaining the demurrer to the bill of complaint in the instant case, and that the decree appealed from should therefore be affirmed.

Affirmed.

**Lee, Kyle, Arrington** and **Ethridge, JJ.**, concur.