L. A. PICH V. A. H. LANKFORD ET AL.

No. A-6165. Decided May 15, 1957.
Rehearing overruled June 19, 1957.
(302 S.W. 2d Series 645.)

336

*Homer L. Baughman,* of Fort Worth, *Williams Broughton & Forbis,* and *John T. Forbis,* for petitioner.

*James L. Cutcher,* of Taylor, and *Richard D. Bird,* of Childress, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This case presents questions of ownership of mineral fee and royalty interests in a tract of 160 acres of land described as the Southwest one-fourth (1/4) of Section No. 490, Block H. W. & N. W. Ry. Co. Survey, Childress County.

Petitioner, L. A. Pich, is the agreed common source of title.

On September 28, 1928 petitioner conveyed the 160 acres of land to F. D. Turner by a deed containing a reservation of "one half of the full 1/8th Oil Royalty, or a 1/16th of all minerals produced on said land."

On May 20, 1929 Turner conveyed the land to Lewis B. Adams by a deed which contained no reservations or exceptions.

On February 27, 1930 Adams and wife conveyed the land to S. J. Higgs by a deed containing a reservation to the grantors of "one fourth of all royalty, the same being 1/32 of all oil and gas produced from said land." The one-fourth royalty reserved by Adams was in due course conveyed by him to H. Canfield and by Canfield to his daughter, Dorothy Canfield Fuehr.

On October 18, 1941 Frank S. Magers, administrator of the estate of S. J. Higgs, deceased, conveyed all right and title of S. J. Higgs in and to the land to Collins Howard by a deed which contained no reservations or exceptions.

On January 26, 1943 Collins Howard and wife conveyed the land to W. J. Sharp and wife, Emma E. Sharp, by a deed which, following the description of the land, contained the following language: "SAVE AND EXCEPT an undivided three-fourths of the oil, gas and other minerals in, on and under said land, which have been heretofore reserved."

On September 26, 1947 W. J. Sharp and wife conveyed all of Section 490 to respondents, A. H. and B. L. Lankford, by a deed which, following the description of the land, contained the following language: "SAVE AND EXCEPT an undivided three-fourths of the oil, gas and other minerals in and under the Southwest Quarter thereof, and an undivided one-fourth of the minerals in and under the remainder of said survey, which minerals do not belong to the grantors herein."

On November 15, 1955 Collins Howard and wife quitclaimed to petitioner, Pich, all of their right, title and interest in the three-fourths of the minerals "excepted and reserved" by them in their deed to the Sharps, and on December 12, 1955 the Sharps quitclaimed to petitioner all of their right, title and interest in the three-fourths of the minerals in and under the 160 acres of land "reserved and excepted" by them in their deed to the respondents.

Respondents were plaintiffs in the trial court. Petitioner and Mrs. Fuehr and her husband were defendants. The petition on which respondents went to trial contained statutory allegations in trespass to try title to the entire fee title to the 160 acres of land, with specific allegations that the reservation by petitioner in the deed of 1928 was a reservation of "a one-half (½) undivided interest in and to all of the oil, gas and other minerals in and under said lands" and that the reservations by Adams in the deed of 1930 was a reservation of "a one-fourth (¼) undivided interest in and to all the oil, gas and other minerals in and under said lands," which reservations, they alleged, conferred no title on the grantors but were illegal and void and constituted clouds on respondents' title which should be removed and cancelled. In a separate count they alleged that the exception in the deed executed by the Howards to the Sharps on

January 26, 1943 did not reserve any interest to the grantors and that "the pure intention of the grantors in said deed was to convey all of the interest in said lands that the grantors owned;" that the reservation created a cloud on petitioners' title which should be removed and cancelled. The petition contained no specific allegations with reference to the exception contained in the deed executed to respondents by the Sharps.

In their answer petitioner and Mrs. Fuehr pleaded not guilty and disclaimed as to all interest in the land except as to "an undivided three-fourths ($\frac{3}{4}$) interest in and to all of the oil, gas and other minerals in, under and that might be produced from said land." By way of cross-action petitioner and Mrs. Fuehr then sought by a statutory trespass to try title action to recover title to and possession of the undivided three-fourths ($\frac{3}{4}$) interest in the minerals. To the cross-action respondents had a plea of not guilty and a general denial.

No evidence other than the instruments heretofore described was tendered or introduced on the trial. At the conclusion of a trial before the court the trial judge adjudged Dorothy Canfield Fuehr to be the owner of one-fourth ($\frac{1}{4}$) of the one-eighth (1/8) non-participating royalty, petitioner, L. A. Pich, to be the owner of one-half ($\frac{1}{2}$) of the one-eighth (1/8) non-participating royalty, and respondents, A. H. and B. L. Lankford, to be the owners of the fee title to the 160 acres of land, less the royalty interests adjudged to Mrs. Fuehr and to petitioner.

Both petitioner and respondents appealed from the judgment, petitioner asserting in the Court of Civil Appeals that the trial court erred in failing to adjudge to him the title to three-fourths ($\frac{3}{4}$) of the minerals from which a one-fourth ($\frac{1}{4}$) royalty interest should have been carved and awarded to Mrs. Fuehr, and respondents asserting that the trial court erred in awarding a recovery of any interest to Mrs. Fuehr. The Court of Civil Appeals affirmed the trial court's judgment. 295 S.W. 2d 749. Respondents did not file an application for writ of error and the judgment awarding Mrs. Fuehr title to one-fourth ($\frac{1}{4}$) of the one-eighth (1/8) non-participating royalty has therefore become final and is not in issue in this court.

The real question to be decided is as to the effect of the language quoted from the deeds executed by the Howards to the Sharps and by the Sharps to respondents.

Petitioner contends that the legal effect of the language was to except from the grants in the deeds a three-fourths ($\frac{3}{4}$) undivided interest in and to the minerals in place and that title to that interest never passed to respondents and they never became the owners thereof; that the fact that a false reason may have been given for the exception does not alter the operative effect thereof. He further contends that since the interest was excluded from the grants in the deeds it necessarily remained in the grantors whose rights, title and interests petitioner holds.

Respondents contend that the deeds must be construed most strongly against the grantors and so as to pass the largest estate possible to the grantees, and that when so construed it is apparent that the Howards and the Sharps did not intend by the language in their deeds to reserve unto themselves any interest or estate in the minerals in place, but, in order to protect thmselves on their warranties, intended only to except from the grants in the deeds the one-half ($\frac{1}{2}$) and one-fourth ($\frac{1}{4}$) interests in royalty which had been theretofore reserved in the deeds executed by petitioner and Adams.

The Court of Civil Appeals agreed with respondents' contention, citing as authority for its conclusion Klein v. Humble Oil & Refining Co., 126 Texas 450, 86 S.W. 2d 1077; Methodist Home v. Mays, Texas Civ. App., 273 S.W. 2d 444, writ refused, n.r.e., and Woods v. Sims, 154 Texas 59, 273 S.W. 2d 617. We agree with petitioner and disagree with respondents and the Court of Civil Appeals.

■ The decisions of this Court have established that an interest in minerals in place and an interest in royalty are separate and distinct estates in land. Richardson v. Hart, 143 Texas 392, 185 S.W. 2d 563; Benge v. Scharbauer, 152 Texas 447, 259 S.W. 2d 166; Woods v. Sims, 154 Texas 59, 273 S.W. 2d 617. See also Palmer v. Crews, 203 Miss. 806, 35 So. 2d 430, 4 A.L.R. 2d 483. It is also well established that an interest or estate in land excepted from a grant is excluded from the grant and does not pass to the grantee. King v. First National Bank of Wichita Falls, 144 Texas 583, 192 S.W. 2d 260, 262; 163 A.L.R. 1128; Reynolds v. McMan Oil & Gas Co., Texas Com. App., 11 S.W. 2d 778, 781, motion for rehearing overruled, 14 S.W. 2d 819; 14 Texas Jur. 958, Deeds, Sec. 175.

There is no patent ambiguity in the Howard and Sharp

deeds. The deeds do not except from the grants *only* such royalty interests or interests in the minerals as "have heretofore been reserved" or that "do not belong to the grantors herein;" they except an undivided three-fourths (¾) interest in the minerals in place in plain and unambiguous language. The quoted phrases are but recitals which purport to state why the exceptions are made. The chain of title conclusively negatives the recitals. It shows they are false. The giving of a false reason for an exception from a grant does not operate to alter or cut down the interest or estate excepted, nor does it operate to pass the excepted interest or estate to the grantee. Roberts v. Robertson, 53 Vt. 690, 38 Am. Rep. 710; Ambs v. Chicago, etc. Ry. Co., 44 Minn. 266, 46 N.W. 321; Georgia Vitrified Brick & Clay Co. v. Georgia R. & Banking Co., 148 Ga. 650, 98 S.E. 77; Oldham v. Fortner, 221 Miss. 732, 74 So. 2d 824; Gibson v. Sellars, (Ky.), 252 S.W. 2d 911, 37 A.L.R. 2d 1435.

In Roberts v. Robertson, supra, the Vermont court dealt with a deed conveying specifically described land and containing the following clause: "Said J. C. Roberts reserving lots sold, Nos. 1, 2, 3 * * * 32, 33." Lots 32 and 33 had not, in fact, been sold. With respect to the effect of the language used in the reservation, the court said:

"Here lots 32 and 33 are described as lots *sold.* If the grantor had said, 'I except all the lots heretofore sold,' and had added nothing more by way of description, the reasoning of the defendant would be sound. The exception then would cover only such lots as had in fact been sold. But the plaintiff specially enumerates the lots excepted from his grant, and describes them by number, the only practicable way in which such lots can be described. The false circumstance that they were sold, added to the certain description given, must be disregarded." 53 Vt. 693.

The deed involved in Ambs v. Chicago etc. Ry. Co., supra, conveyed certain land by metes and bounds description, following which were these words: "with the exception of Lot 6, Block 36, heretofore conveyed to William H. Brown by Louis Robert and wife." The question before the Supreme Court of Minnesota was whether title to such lot passed under the deed. With respect to that question the court said: "The deed clearly shows an intention that from the land granted by it there should be excepted a tract which was designated Lot 6, in Block 36, and which was further described as having been previously conveyed to William H. Brown * * *. Though it was not shown that

the lot had in fact been conveyed to William H. Brown, or even if it had been shown that such was not the fact, the maxim *falsa demonstratio non nocet* would apply, and that fact would be immaterial, the excepted lot being otherwise described with sufficient certainty." 46 N.W. 321-322.

Gibson v. Sellars, supra, involved a deed of conveyance of the fee simple title to certain lands, the deed containing the following exception: "It is expressly understood and agreed by the parties that the coal and mineral rights underlying said tract of land have been heretofore sold by the First Party and are not intended to be conveyed by this deed and are expressly excluded herefrom." The record reflects that the coal had been theretofore sold but that the other minerals underlying said lands had not been, and the contention was made that the other minerals were not excepted. The contention was overruled, the court saying: "The recitation of erroneous circumstances or the reason for an exception does not limit the exception. The court is not concerned with reasons for the exception, but rather, what is the exception. We are not required to determine why Lockie Gibson excepted certain substances. Our concern is, what substances did she except." After quoting from certain authorities the court continued: "We, therefore, conclude that the recitation in the exception before us that the coal and mineral rights had theretofore been sold was at most only an erroneous recitation of fact and did not limit or restrict the effect of the exception."

The rule drawn from the foregoing cases by the writer of the text in Corpus Juris Secundum (26 C.J.S. 1008, Deeds, Sec. 139) is as follows:

"Further, when certain tracts excepted are specifically described, and it is further recited that they have been previously sold or conveyed, the exception will be good, although the recital is false since it may be rejected, or although the prior conveyance did not effectuate a transfer of the property described therein, or even through the property previously conveyed reverts to the grantor by reason of the grantee in the prior conveyance ceasing to use it for the purpose prescribed in the deed."

See also 16 Am. Jur. 619, Deeds, Sec. 318.

The only Texas case which appears to bear on the question is Umscheid v. Scholz, 84 Texas 265, 16 S.W. 1065. In that case

the deed involved contained the following language: "It being understood that the public thoroughfare formerly existing along the edge of the river at this point is not intended to be conveyed by these presents, the corporation of the City of Bexar having the right to open said thoroughfare when it sees fit." There was no evidence that the City had the right to open the thoroughfare, but this court held that the exception was not affected by the false recitation and that the property previously used for such thoroughfare did not pass to the grantee.

The exceptions in the Howard and Sharp deeds cannot by construction be made to deal with a royalty interest when they so plainly deal with an interest in minerals in place. Only by reformation may they be made to deal with the outstanding royalty interests and, as our analysis of the pleadings shows, there were not allegations of fraud, accident or mistake and no prayer for reformation. Klein v. Humble Oil & Refining Co., supra, and Methodist Home v. Mays, supra, are not controlling. In each of those cases the deed being construed reserved and excepted from the grant an estate in land identical with the one theretofore reserved or conveyed by a prior grantor. Woods v. Sims, supra, does not bear on the point. The undivided three-fourths ($\frac{3}{4}$) interest in the minerals in place was excluded from the grants in the Howard and Sharp deeds and title thereto did not pass to respondents.

Since the title to the three-fourths ($\frac{3}{4}$) interest in the minerals in place never passed to respondents, we have next to decide whether the trial court and Court of Civil Appeals erred in failing to adjudge title thereto to be in petitioner.

■ Petitioner acquired by quitclaim deed from the Howards whatever right, title or interest they then owned. The language heretofore quoted from the deed from Howard to Sharp did not *reserve* the interest in the minerals to Howard; it only *excepted* it from the grant. However, since the interest did not pass to the grantee and was not outstanding in another the legal effect of the language excepting it from the grant was to leave it in the grantor, Howard. The words "exception" and "reservation" are not strictly synonymous, Donnell v. Otts, Texas Civ. App., 230 S.W. 864, 865, no writ history; 14-B Texas Jur. 714, Deeds, Sec. 247, but they are often used interchangeably. King v. First National Bank of Wichita Falls, 144 Texas 583, 192 S.W. 2d 260, 262; 163 A.L.R. 1128; Reynolds v. McMan Oil & Gas Co., Texas Com. App., 11 S.W. 2d 778; Klein v. Humble Oil & Refining Co., Texas Civ. App., 67 S.W. 2d 911, 915, af-

firmed 126 Texas 450, 86 S.W. 2d 1077. In the case last cited it is said: "The primary distinction between a reservation and exception is that a reservation must always be in favor of and for the benefit of the grantor, whereas, an exception is a mere exclusion from the grant, *in favor of the grantor only to the extent that such interest as is excepted may then be vested in the grantor and not outstanding in another.*" (Emphasis ours).

Petitioner, L. A. Pich, is adjudged to be the owner of an undivided three-fourths (¾) interest in the minerals in, on and under the 160 acres of land. Respondents are adjudged to be the owners of the surface and an undivided one-fourth (¼) interest in the minerals in, on and under the 160 acres of land. Mrs. Dorothy Canfield Fuehr is adjudged to be the owner of an undivided one-fourth (¼) of the one-eighth (1/8) non-partici-pating royalty of all oil, gas and other minerals in, on and under and which may be produced from said land. Ordinarily the royalty interest adjudged to Mrs. Fuehr would be carved pro-portionately from the two mineral ownerships but petitioner has asserted in his appeal brief that it should be carved entirely from the mineral interest adjudged to petitioner and it will be so adjudged.

The judgments of the trial court and Court of Civil Appeals are reversed and the cause is remanded to the trial court for the entry of judgment in accordance with this opinion.

Opinion delivered May 15, 1957.

MR. JUSTICE GARWOOD, dissenting.

In that portion of the judgment and opinion of the Court of Civil Appeals in the Klein case, 67 S.W. 2d 911, 913-917, which was expressly affirmed and approved by this Court, 126 Texas 450, 86 S.W. 2d 1077, the former Court held a purported *exception* of "1/8 of all mineral rights" in a deed from one Klein to one Baker to be, not truly an exception, but merely a reference back to a reservation of "one-eighth (1/8) of all mineral rights" made by a prior grantor (Stein), the "exception" being made (according to the Court) only for the purpose of limiting the granting clause used by Klein, which otherwise covered the full title to the premises, and thus avoiding Klein becoming liable on a warranty of the full title. The Court reasoned, with our approval, that if the "exception" were con-strued to hold out any interest other than that already reserved

by the prior grantor (Stein), Klein's grant to Baker would purport to convey to Baker more than Baker actually got. So the Court proceeded, with our approval, to construe Klein's purported "exception" as referring only to the earlier reservation.

To the instant case, according to our holding, the grantor Howard, who corresponds to Klein, will have purported to convey with warranty that which he did not have, to wit, a free and clear ¼ of the minerals. Any 1/4 "mineral interest" purportedly conveyed was subject to the reserved royalty, so was not free and clear. A ¼ mineral estate subject to an outstanding royalty interest is worth less to the owner than it would be if not so burdened. So the grantor, Howard, will have breached his warranty, if we hold that the "exception" was an exception of something other than the royalty previously reserved.

In support of its holding, the Court in the Klein case reasoned further that the use by the grantor, Klein, of the very word "excepted," as distinguished from "reserved," tended to show that the "exception" might well be for the purpose which the Court held him to have had in mind, and in this connection it used the very words now quoted in the instant case as apparently conducing to a contrary view. In the Klein case, incidentally, the grantor, Klein, at the time he executed the deed, owned all interests in the land except the 1/8 outstanding interest reserved by his grantor (Stein) even as Howard did in the instant case at the time of his conveyance to Sharp.

The Court in the Klein case also made reference to all the language of the "exception" in the Klein deed and the language in the previous Stein reservation.

It is also of interest to note that the Supreme Court, in dealing with the other question in the Klein case, that is, the controversy between Baker as mineral lessor and Humble as assignee of the lease, held that, under the circumstances, the Stein reservation above mentioned was actually a royalty despite its language "one-eighth (1/8) of all mineral rights in and under" the land.

As I see it, we cannot charge off the Klein case by saying that in the instant case, the "exception" was clearly one of a ¾ "mineral interest" in the technical sense of that term and that, such an interest being a different kind of estate from the

*royalty* estate outstanding, the "exception" could not possibly be taken to refer to the outstanding royalty. The theory of the Klein holding is that the whole Klein deed, as well as other things, might be looked to in order to determine what the "exception" meant. And I think that same theory may be extended to an enquiry in the instant case as to whether the words, "SAVE AND EXCEPT an undivided three-fourts of the oil, gas and other minerals in, on and under said land, which have been heretofore reserved," are necessarily to be construed, under the particular circumstances, as a mineral interest in the sense that excludes a royalty interest.

Obviously a royalty is, in a perfectly normal and legitimate sense, a mineral interest, and not only that, but an interest in minerals in place. It may be created in advance of a lease and even be the subject of ad valorem taxes as real estate before the owner of it receives any proceeds from it. The fraction in which it is expressed may be, and often is, considered· as that particular fraction *of the minerals,* although the latter may be still "in place." Indeed, in the instant case, one of the reserved royalties is expressed both in terms of "royalty" and in terms of the same fraction "of all minerals."

The fact that there is a well recognized and important difference between the character of the two estate, and that, in the same instrument, a grantor may validly convey one fraction of the mineral estate and reserve or except a different fraction as royalty, does not, of course, require that language, such as in the Howard "exception" clause, shall necessarily and always mean something other than a royalty. None of the cases cited in the main opinion, as I read them, so hold. As above pointed out, we actually held in the Klein case that, *under the circumstances* of that case, words, such as we now hold to mean a "mineral interest" beyond possibility of a different construction, actually meant a *royalty* interest.

Under the circumstances of this case, it seems to me that we may also properly consider the recital in the Howard deed "which have been heretofore reserved." The Court will, I'm sur, concede that the recital is not false, *unless* we assume that the preceding words, "three-fourths of the oil, gas and other minerals in, on and under," necessarily exclude a reserved royalty interest, considering the deed as ˙a whole. Roberts v. Robertson, 53 Vt. 690, and the other decisions cited in connection with the matter of false recitals, are relevant only on that assumption, which I do not think we should indulge. If the pre-

ceding language is at all subject to construction, as I think it is in the light of the Klein case, the reference, "heretofore reserved," can be properly considered.

On the whole, the Klein case appears to me to be controlling and to require a different result than we have reached.

Opinion delivered May 15, 1957.

Rehearing overruled June 19, 1957.